13. The guideline imprisonment range is 27 to 33 months.

14. The guideline fine range is $6,000.00 to $60,000.00.

An appropriate order will be entered.

**UNITED STATES of America**

v.

**Paul W. ASPER.**

**Nos. CR–90–043, CR–90–088.**

United States District Court,
M.D. Pennsylvania.

Dec. 13, 1990.

Robert R. Long, Asst. U.S. Atty., Scranton, Pa., and Jonathan Blackmer, U.S. Dept. of Justice, Washington, D.C., for U.S.

George E. Lepley, Jr., Marcello & Lepley, Williamsport, Pa., and James Protasio, South Williamsport, Pa., for Paul W. Asper.

MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Today we issued an opinion and order setting forth the background of this case and calculating the sentencing guideline ranges. In that opinion and order of December 13, 1990, we determined as to the post October, 1987, crimes the guideline imprisonment range and the fine range. We left unresolved the question of departure from the guidelines. A presentence hearing on the departure question was held December 11, 1990. This order relates only to departure from the guidelines and does not relate to the pre-November, 1987, felony counts.

Both the Government and Asper object to paragraph 99 of the presentence report which states "[t]here appear to be no aggravating or mitigating circumstances that would warrant a departure from the guidelines." U.S.S.G. § 5K2.0 indicates in part:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

■ First, the Government argues that "the Sentencing Commission did not contemplate the income derived by a violator of wildlife laws as a result of exploitation of the illegally-taken wildlife." However, we are of the view that the enhancements for commercial purpose and market value adequately address this concern.

■ Second, the Government argues that departure is warranted under U.S.S.G. § 5K2.7 because "Asper's illegal trade of wildlife protected by the CITES treaty significantly disrupted the function of the United States, a member nation of CITES, of protecting wildlife listed on the treaty's Appendices" and Asper's "failure to declare the wildlife upon entry into the United States disrupted the ability of the United States Fish and Wildlife Service to monitor the importation of wildlife in order to protect the health and welfare of the general public."

U.S.S.G. § 5K2.7 indicates:

If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

A disruption of a governmental function in the instant case was not present in excess of that which ordinarily is involved in the offenses of which Asper was found guilty. Furthermore, a departure for disruption of a governmental function cannot be premised solely on the inconvenience resulting from investigating a criminal offense or performing duties that are part of the mandate of a particular agency or branch of government. Thus, a departure on this basis is not warranted.

■ Third, the Government argues that a departure is warranted pursuant to U.S.S.G. § 5K2.8 which provides:

If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase

the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

We are of the view that this section may apply in instances where you have an identifiable, individual victim, not where the victim is society in general. The language "heinous, cruel, brutal, or degrading to the victim" and "torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation" supports this conclusion.

■ Fourth, the Government argues that a departure is warranted pursuant to U.S.S.G. § 5K2.9 which provides:

If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct.

The Government contends that the transportation and concealment of the Jentink's Duiker mount was an attempt to prevent the discovery of the illegal importation and the possession of the animal. We decline to depart on this ground because we have considered this conduct in determining the total offense level.

■ Fifth, the Government contends that a departure is warranted pursuant to U.S.S.G. § 4A1.3 which provides in part:

§ 4A1.3.  *Adequacy of Criminal History Category* (Policy Statement)

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.  Such information may include, but is not limited to, information concerning:

(a) prior sentence(s) not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense;

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

A departure under this provision is warranted when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.

The Government raises two instances of prior similar adult criminal conduct not resulting in a criminal conviction.  In 1976 Asper imported a shipment of hunting trophies from Africa.  Asper attempted to bring into this country the skins of a Nile crocodile and a leopard hidden deep within the folds of an African elephant hide. Both the leopard and the Nile crocodile were listed as endangered species that cannot be imported into the United States without special permits which Asper did not receive.  Asper was cited by the U.S. Fish and Wildlife Service with violations of the Endangered Species Act and the Lacey Act for which he paid a civil penalty of $1,200.00.

The second incident occurred in 1979 when Asper was assessed a civil penalty for a violation of the Bald Eagle Protection Act for the possession of a Bald Eagle which he had had mounted by a taxidermist, Donald Young.  The investigation revealed that Asper shot the Bald Eagle in Canada and smuggled the eagle into the United States by rolling it up inside a mountain lion hide.  The assessment was upheld by an administrative law judge after a lengthy administration process only to be overturned on December 26, 1986, by U.S. District Judge Edwin M. Kosik on

statute of limitations grounds. (See ¶ 52 of the presentence report.)

Another incident that deserves to be mentioned is the occasion when Asper in 1980 attempted to bring into the United States via Mexico City the hides and horns of Serows and Gorals. After the hides' arrival in Mexico, Asper attempted to make connections through Michael Valencia to have a Mexican national locate and secure the hides from Mexican customs in an effort to evade a normal American port of entry designated for wildlife imports. Asper's attempts at getting the hides apparently ceased when he learned of the substantial cost and difficulties of getting the hides out of Mexican customs. (See ¶ 53 of the presentence report).

Although these three incidents are troubling and suggest that Asper engaged in criminal conduct that is not reflected in the criminal history category I, this category does not significantly under-represent the seriousness of Asper's criminal history or the likelihood that he will commit further crimes.

■ Asper contends that there should be a downwards departure from the guidelines because he has made significant contributions to the community in which he and his wife Carole reside and it was his and his wife's intent to devise and bequeath the museum to Lycoming County upon their passing together with an endowment fund. Further, Asper contends that the fact that he placed the endangered animals on display for everyone to view and enjoy and did not secrete them in his home is a mitigating factor. Asper contends that because thousands of people have visited and enjoyed the museum displays he should receive a downwards departure from the guidelines. At the hearing held on December 11, Asper presented a document entitled "Memorandum of Intent" which was signed by Paul W. Asper and Carole J. Asper. The document was to be delivered to Lycoming County. Carole Asper testified that she did not know if the document was ever delivered to Lycoming County. This document purported to demonstrate the intent of Paul and Carole Asper with respect to disposition of the museum and its assets after their death. Also presented was a document purported to be the will of Carole Asper which provided for the same disposition of the museum.

We are of the view that Asper's alleged intent to donate the museum and its assets to the County of Lycoming is not a mitigating factor that would justify a downwards departure from the guidelines because the memorandum of intent is not binding and the wills of the Aspers can be revoked at any time. Placing the endangered species on display cannot be considered a mitigating factor. Society has determined that certain species of wildlife are endangered and that they should not be imported into the United States or possessed in the United States unless the individual has the proper permits or licenses from the Government. Furthermore, although Asper placed these animals on display for the public to view, the public did not know that these animals were endangered and when Asper became aware that federal agents were investigating him, he took steps to cover his illegal conduct. Thus, a downwards departure is not warranted.

The circumstances of Asper's case are not sufficiently unusual to warrant an upwards or downwards departure.

NOW, THEREFORE, IT IS ORDERED THAT:

The Government's and Asper's objections to ¶ 99 of the presentence report which provides that there are no aggravating or mitigating circumstances warranting a departure from the guidelines with respect to the post October, 1987, crimes are overruled.