10 F.3d 1003
 UNITED STATES of America
v.
James Clifton CHERRY, Appellant.
 No. 92-5422.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 25, 1993.
Decided Dec. 6, 1993.
 
 Brian P. Reilly (argued), Asst. Federal Public Defender, Trenton, NJ, for appellant.
 Michael Chertoff, U.S. Atty. and R. David Walk, Asst. U.S. Atty. (argued), Newark, NJ, for appellant.
 Before: STAPLETON and COWEN, Circuit Judges, and DuBOIS, District Judge.*
 OPINION OF THE COURT
 DuBOIS, District Judge.
 I. INTRODUCTION
 This appeal requires us to decide several issues which arise when the United States Sentencing Guidelines (U.S.S.G. or the "guidelines") do not contain a provision expressly applicable to the offense for which a defendant has been convicted and the district court applies a guideline deemed to be most analogous to the offense of conviction. We have jurisdiction pursuant to 18 U.S.C. Sec. 3742(a) and 28 U.S.C. Sec. 1291.
 Appellant James Clifton Cherry appeals a sentence imposed upon him under the guidelines after he pled guilty to one count of Unlawful Flight to Avoid Prosecution in violation of 18 U.S.C. Sec. 1073. At the sentencing hearing on July 22, 1992, in the absence of an applicable guideline, the district court applied what it considered to be the most analogous guideline--U.S.S.G. Sec. 2J1.6, Failure to Appear by Defendant. Relying in part on the recommendations set forth in the presentence report prepared by the United States Probation Office ("Probation Office"), the district court's calculations resulted in a total offense level of twenty and a criminal history category of II, for which the guidelines prescribed a range of 37 to 46 months' imprisonment. Cherry was sentenced to 42 months in prison, three years of supervised release upon his release from prison, and ordered to pay a special assessment of $50.
 Cherry cites four grounds for error in the sentence. Three of his challenges attack the district court's application of the guidelines. First, Cherry claims the district court erred by departing upward, adding two levels to the base offense level, by analogy to U.S.S.G. Sec. 3C1.1, Obstruction of Justice. He contends the Sentencing Commission adequately considered and specifically rejected the application of section 3C1.1 to the Failure to Appear guideline under which Cherry was sentenced.
 Second, Cherry claims that the district court erred by departing upward, adding three levels to the base offense level, by analogy to U.S.S.G. Sec.3A1.2, Official Victim. He argues that section 3A1.2 only applies where the victim of the offense for which the defendant is being sentenced is an individual and contends that the only victims of the offense of unlawful flight are those government agencies responsible for law enforcement, and, therefore, the official victim guideline is inapplicable.
 Third, Cherry claims that there can be no upward departure for facilitating or concealing the underlying crime of murder pursuant to U.S.S.G. Sec. 5K2.9, Criminal Purpose, (Policy Statement), and that the district court erred by departing upward under that guideline, adding two levels to the base offense level. It is Cherry's position that his flight did not conceal the commission of the offense from which he sought to avoid prosecution. Furthermore, Cherry contends that in formulating section 2J1.6 the Sentencing Commission adequately considered the severity of the underlying crime by providing a nine level upward adjustment based on that factor. See U.S.S.G. Sec. 2J1.6(b)(2)(A).
 Lastly, Cherry claims that the district court failed to resolve or disclaim factual inaccuracies in the presentence report as required by Federal Rule of Criminal Procedure 32. Fed.R.Crim.Proc. 32(c)(3)(D). That alleged error arises out of the submission by Cherry of a twelve page handwritten document at sentencing.
 For the reasons which follow, we affirm the district court's two level upward departure for obstruction of justice and hold that there was no violation of Federal Rule of Criminal Procedure 32. However, we disagree with the district court's rulings that Cherry's unlawful flight involved an official victim and that his unlawful flight facilitated or concealed the underlying offense. Furthermore, we agree with the Government's position, which was not addressed by Cherry, that in calculating Cherry's criminal history category, the district court should have used the version of the guidelines in effect at the time of sentencing, which incorporated the November 1, 1991 amendments (the "1991 guidelines"), as that version of the guidelines was more favorable with respect to calculation of criminal history category than the earlier version applied by the district court which incorporated the November 1, 1989 amendments (the "1989 guidelines").[1] Consequently, we will vacate Cherry's sentence and remand the case to the district court for resentencing.
 II. BACKGROUND
 A. Facts
 The facts relevant to the issues on appeal are virtually undisputed. The crime from which Cherry fled occurred on September 30, 1970, when Atlantic City, New Jersey Police Officer John P. Burke was shot and killed while on duty. An investigation into the shooting led police to conclude that Cherry was a prime suspect; however, attempts to locate Cherry were unsuccessful. Based on evidence gathered during the police investigation, Cherry was indicted in late 1970 for the murder of Officer Burke.
 Some time between October and December of 1970,[2] Cherry fled to Cuba to avoid being prosecuted for the murder of Officer Burke. He remained in Cuba for approximately twenty years before returning to the United States on September 26, 1990. Upon his return to the United States, Cherry was arrested and brought to New Jersey to face prosecution for the murder of Officer Burke. On February 11, 1990, Cherry was convicted in New Jersey state court of first-degree murder and on March 20, 1992, he was sentenced to life in prison.
 In January 1992, a federal grand jury returned a one count indictment charging Cherry with unlawful flight to Cuba from on or about September 30, 1970, to on or about September 26, 1990, in order to avoid prosecution for the murder of Officer Burke in violation of 18 U.S.C. Sec. 1073.[3] On May 5, 1992, Cherry entered a plea of guilty to the unlawful flight charge and was subsequently sentenced to 42 months in prison to be served consecutively to his life sentence for murder.
 B. Calculation of Sentence for Unlawful Flight to Avoid Prosecution by the Probation Office
 The Probation Office calculated the guideline imprisonment range using the 1989 guidelines, the guidelines in effect at the time of the last act involved in the offense conduct. Because the 1989 guidelines did not contain a provision expressly applicable to a violation of 18 U.S.C. Sec. 1073, the Probation Office, pursuant to U.S.S.G. Sec. 2X5.1, Other Offenses,[4] relied on the analogous guideline, U.S.S.G. Sec. 2J1.6, Failure to Appear by Defendant, in computing the base offense level.
 Section 2J1.6(a) provides a base offense level of six. Section 2J1.6(b)(1),[5] Specific Offense Characteristics, provides for a nine level increase in the base offense level where the underlying offense is punishable by death or imprisonment for a term of fifteen years or more. U.S.S.G. Sec. 2J1.6(b)(1). Because the underlying offense of murder for which Cherry failed to appear is punishable by death or imprisonment for a term of fifteen years or more, the Probation Office concluded that the nine level increase was warranted.
 Next, based on its conclusion that the victim of the offense was a law enforcement officer, the Probation Office increased the offense level by three pursuant to section 3A1.2, Official Victim.[6] The adjusted offense level was reduced by two for acceptance of responsibility pursuant to U.S.S.G. Sec. 3E1.1(a) based on Cherry's recognition and affirmative acceptance of responsibility for the unlawful flight charge.
 The offense level calculations prepared by the Probation Office resulted in a total offense level of sixteen and, based on three criminal history points for Cherry's conviction on the murder charge, a criminal history category of II, see U.S.S.G. Sec. 4A1.1(a), and a guideline imprisonment range of 24-30 months.
 C. Objections to Calculation of Sentence
 The Government objected to the failure of the Probation Office to increase the offense level by two levels for obstruction of justice. (Presentence Report, "PSR", at 13) In support of its objection, the Government argued that because section 2J1.6 was used by analogy, all relevant sections of the guidelines, in particular the offense level adjustments in Chapter Three, should be considered "to compensate for the inconsistencies found between a guideline section used by way of an analogy and the offense which has no direct applicable section." (PSR at 13)
 Cherry objected to the Probation Office's recommendation of a three level upward adjustment for official victim and the two level upward departure for facilitating or concealing another offense, and paragraph 53 of the presentence report which recommended consideration of an upward departure pursuant to U.S.S.G. Sec. 4A1.3 on the ground that criminal history category II did not adequately reflect the seriousness of Cherry's twenty years as a fugitive in Cuba. (PSR at 11-12)
 D. Government Motions for Upward Departure
 Prior to sentencing, the Government moved for upward departures on three grounds. First, the Government moved for an upward departure under U.S.S.G. Sec. 5K2.0, Grounds for Departure, (Policy Statement),[7] on the ground that, in formulating the guideline for Failure to Appear, the Sentencing Commission failed to take into account the aggravating circumstances extant in the instant case--the extraordinary amount of time Cherry spent as a fugitive, the seriousness of his conduct in light of the underlying offense, and the prejudice to the prosecution of the underlying offense caused by the flight.
 Second, the Government moved for an upward departure under U.S.S.G. Sec. 4A1.3, Adequacy of Criminal History Category, (Policy Statement),[8] on the ground that the criminal history category prescribed by the guidelines did not adequately reflect the seriousness of Cherry's past criminal conduct.
 Third, the Government moved for an upward departure under section 5K2.9[9] on the ground that Cherry's flight was committed to facilitate or conceal the commission of another offense--the murder of Officer Burke.
 E. The District Court's Findings and Conclusions
 In ruling on the Government's motions to depart upward, the district court commented on the "rather weak analogy" between the offense of unlawful flight to avoid prosecution and the guideline for failure to appear. The district court concluded that the unlawful flight offense involved "factors which are different in degree and time than any question of failure to appear for a pending procedure." (Sentencing Hr'g. Tr. at 33) The district court also commented that "[t]o treat failure to appear and unlawful flight the same or similar would be to trivialize a very serious offense, one that the [C]ongress was quite concerned with...." Id.
 The district court concluded that the guideline offense level adjustments for obstruction of justice and official victim were not directly applicable to the Failure to Appear guideline, but stated it would consider departing upward by analogy to such guidelines. The district court then identified three aggravating factors which were not adequately taken into consideration by the Sentencing Commission when it promulgated the failure to appear guideline--the unusual length of Cherry's absence, Cherry's flight to a country with which the United States has no extradition treaty, and the resulting difficulty in prosecuting the underlying offense because of evidence becoming stale and witnesses becoming unavailable.
 The district court concluded that, by analogy to U.S.S.G. Sec. 3C1.1, Cherry's twenty year absence in Cuba had the effect of obstructing justice which warranted a two level upward departure. Second, the district court concluded that, by analogy to U.S.S.G. Sec. 3A1.2, Cherry's unlawful flight was committed for the purpose of avoiding prosecution for a crime which involved an official victim, thereby warranting a three level upward departure. Third, relying upon section 5K2.9, the district court concluded that Cherry's unlawful flight was committed for the purpose of facilitating or concealing the underlying crime of murder, thereby warranting a two level upward departure. The district court rejected the Government's motion for an upward departure on the ground that criminal history category II did not adequately reflect the seriousness of Cherry's past criminal conduct.
 The district court's upward departures increased the total offense level to twenty and, based on a criminal history category of II, resulted in a guideline imprisonment range of 37 to 46 months. The district court sentenced Cherry, inter alia, to 42 months' imprisonment.
 IV. DISCUSSION
 Where there is no guideline expressly applicable to the offense of conviction, a sentencing court has two options. If the offense is a felony or Class A misdemeanor, as in the instant case, it may apply the most analogous guideline. U.S.S.G. Sec. 2X5.1. If there is no guideline which is sufficiently analogous, the sentencing court "shall impose an appropriate sentence, having due regard for the purposes set forth in [18 U.S.C. Sec. 3553(a)(2) ]." 18 U.S.C. Sec. 3553(b). In the instant case, the district court correctly applied the most analogous guideline, U.S.S.G. Sec. 2J1.6.
 As a general matter, a district court must sentence within the applicable guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. Sec. 3553(b); United States v. Kikumura, 918 F.2d 1084, 1098 (3d Cir.1990). If the sentencing court's decision to depart from the guidelines is based on "a circumstance that has been adequately considered by the sentencing commission in formulating the guidelines, the departure must be reversed on appeal." United States v. Barr, 963 F.2d 641, 651 (3d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992). In determining whether a factor or circumstance was adequately considered by the Sentencing Commission, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. Sec. 3553(b).
 With the above mentioned principles in mind, we first address Cherry's challenges to the sentence imposed by the district court under the guidelines. As the district court's interpretation and application of the guidelines are matters of law, our review is plenary. Kikumura, 918 F.2d at 1098; United States v. Ryan, 866 F.2d 604, 610 (3d Cir.1989). We accept the district court's findings of fact unless they are clearly erroneous. 18 U.S.C. Sec. 3742(e); Kikumura, 918 F.2d at 1098.
 A. Obstruction of Justice
 U.S.S.G. Sec. 3C1.1 provides for a two level increase in the offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." Cherry, citing Application Note 3 to section 2J1.6,[10] contends that the Sentencing Commission adequately considered and rejected the application of the section 3C1.1 adjustment for obstruction of justice to the Failure to Appear guideline and, therefore, the adjustment is not applicable. Application Note 3 states: "[f]or offenses covered under this section. Chapter Three, Part C (Obstruction) does not apply, unless the defendant obstructed the investigation or trial of the failure to appear count." U.S.S.G. Sec. 3C1.1, comment. (n. 3).
 It is clear from the record of the sentencing hearing that the district court concluded the section 3C1.1 obstruction of justice guideline was not applicable to the Failure to Appear guideline and declined to apply that adjustment as such. Rather, the district court, no doubt relying on U.S.S.G. Sec. 5K2.0 although such reliance is not expressly stated in the record, decided to depart upward by analogy to section 3C1.1 on the ground that the Sentencing Commission did not adequately consider the aggravating circumstances surrounding Cherry's unlawful flight which were extreme and had the effect of obstructing justice--the length of Cherry's absence, his flight to a country from which he could not be extradited, and the resulting difficulty in prosecuting the underlying offense--in promulgating the Failure to Appear guideline.
 We find no error in the district court's findings of extreme aggravating circumstances in this case. We agree with the district court that the aggravating circumstances surrounding Cherry's unlawful flight had the effect of obstructing justice. We also agree with the district court that, in promulgating section 2J1.6, the Sentencing Commission did not adequately consider such extreme aggravating circumstances. Kikumura, 918 F.2d at 1098; U.S.S.G. Sec. 5K2.0 (a factor may be present which was not accounted for by the guidelines, or the guidelines may be deemed inadequate because of unusual circumstances).
 According to Federal Bureau of Investigation records, Cherry fled the United States after being warned that he was wanted by authorities as a suspect in the murder of Officer Burke. (PSR at 3) Cherry's unlawful flight to Cuba and his unusually long absence in a country from which he could not be extradited frustrated law enforcement efforts to prosecute the murder of Officer Burke. Such circumstances are clearly the type of aggravating and unusual factors contemplated by U.S.S.G. Sec. 5K2.0. See generally United States v. Madera-Gallegos, 945 F.2d 264, 267 (9th Cir.1991) (mere flight in the immediate aftermath of a crime is not sufficient to apply the section 3C1.1 adjustment, but such adjustment may be justified by flight coupled with other obstructive conduct).
 There appears to be no disagreement among the parties that the obstruction of justice guideline, U.S.S.G. Sec. 3C1.1, would not be applicable where the offense of conviction is Failure to Appear. However, because of the extent of the obstruction of justice present, not considered by the Sentencing Commission in promulgating the guideline the district court determined to be analogous, U.S.S.G. Sec. 2J1.6, we conclude that the district court had authority to exercise its discretion in departing upward two levels by analogy to the obstruction of justice guideline.
 
 B. Official Victim
 
 1
 Section 3A1.2 authorizes a three level upward adjustment to the base offense level where, inter alia, the victim of the offense of conviction was a law enforcement officer and the offense of conviction was motivated by such status.[11] Application Note 1 to section 3A1.2 states: "[t]his guideline applies when specified individuals are victims of the offense. This guideline does not apply when the only victim is an organization, agency, or the government." U.S.S.G. Sec. 3A1.2, comment. (n. 1).
 
 
 2
 The Government maintains that Officer Burke, his family and his fellow officers on the Atlantic City police force were victims within the meaning of Application Note 1 as a result of the fact that they waited twenty years for the vindication of Officer Burke's death. The Government also cites cases from other circuits for the proposition that in applying the official victim enhancement, it is appropriate to consider persons victimized by the defendant's entire course of conduct. See United States v. Kleinebreil, 966 F.2d 945 (5th Cir.1992) (proper to look at all relevant conduct to determine who is a victim); United States v. Hildebrandt, 961 F.2d 116 (8th Cir.) (Internal Revenue Service agents to whom defendant submitted false statements considered official victims for purposes of section 3A1.2 enhancement), cert. denied, --- U.S. ----, 113 S.Ct. 225, 121 L.Ed.2d 162 (1992); United States v. Muhammad, 948 F.2d 1449 (6th Cir.1991) (sentence for bank robbery enhanced under official victim guideline where defendant assaulted police officer in an attempt to free co-conspirator from officer's custody), cert. denied, --- U.S. ----, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). Furthermore, the Government contends the status of the victim is an important aggravating factor that was not taken into account by the Sentencing Commission in promulgating section 2J1.6.
 
 
 3
 Cherry's arguments opposing the application of the official victim guideline are set forth supra at page 1005 and will not be repeated here. In addition to such arguments, Cherry opposed the Government's emphasis on the underlying offense on the ground that a life sentence has already been imposed as his penalty for committing the underlying offense.
 
 
 4
 Commenting on the Government's position, which it found to have substantial merit, the district court concluded, based on the wording of the official victim adjustment, that such an adjustment was not applicable to the Failure to Appear guideline. However, the district court revisited the official victim issue in its consideration of grounds for departure and concluded that if the Sentencing Commission were to formulate a guideline for unlawful flight, it would consider whether the unlawful flight was to avoid being charged with a crime involving an official victim. The district court then departed upward three levels by analogy to section 3A1.2 because Cherry's unlawful flight was for the purpose of avoiding prosecution for killing Officer Burke.
 
 
 5
 Unlike the obstruction of justice adjustment, the official victim guideline, U.S.S.G. Sec. 3A1.2, is not expressly precluded by section 2J1.6. However, we conclude that there was no official victim of Cherry's unlawful flight within the meaning of Application Note 1 to section 3A1.2, and, therefore, section 3A1.2 is not applicable. Consequently, the district court erred by departing upward three levels by analogy to the official victim guideline.
 
 
 6
 First, the only "victims" of Cherry's unlawful flight were the government, in its capacity as the prosecutor, and the justice system, not the slain police officer, his family or his fellow officers. Cherry's unlawful flight was not motivated by the fact that the victim of the underlying offense was a law enforcement officer; rather, Cherry's flight was motivated by his desire not to be prosecuted for a crime for which he maintains innocence.
 
 
 7
 Second, we decline the invitation to adopt as broad a pronouncement as that suggested by the cases relied upon by the Government in support of its position. The position espoused by the Government, and at least implicitly adopted by the district court, would oblige the sentencing court to "look through" to the underlying offense in a failure to appear or unlawful flight case in order to determine whether there might be an official victim. This is not a position that can be reasonably supported by the guidelines, policy statements and official commentary of the Sentencing Commission.
 
 
 8
 Application Note 4 to section 3A1.2 defines the phrase "motivated by such status" in subdivision (a) to mean that "the offense of conviction was motivated by the fact that the victim was a law enforcement or corrections officer...." (emphasis added). The offense of conviction in the instant case was unlawful flight to avoid prosecution and, as we have already stated, it was not motivated by the status of the victim, but by the fear of prosecution of the offender. We hold, therefore, that a district court must look to the offense of conviction, and not the underlying offense, when determining whether to apply the official victim guideline or to depart by analogy to such guideline.
 
 
 9
 C. Facilitating or Concealing the Commission of Another Offense
 
 
 10
 In support of its position that an upward departure under section 5K2.9 was warranted, the Government relies on Cherry's admission to the Federal Bureau of Investigation that he fled to Cuba to avoid prosecution for the murder of Officer Burke. It is the Government's position that the admitted flight to Cuba to avoid prosecution for the murder of Officer Burke was intended by Cherry to conceal the fact that he murdered Officer Burke. Cherry's arguments against a section 5K2.9 departure have been set forth supra at page 1005 and will not be repeated here.
 
 
 11
 The district court concluded that were the Sentencing Commission to consider promulgating a guideline for unlawful flight, it would probably include an adjustment under section 5K2.9. Concluding that the minimum adjustment under the guidelines is generally two levels, the district court departed upward by two levels for facilitating or concealing another offense.
 
 
 12
 When reviewing a sentencing court's decision to depart from the Sentencing Guidelines, we first consider whether the grounds on which the court departed were permissible and our review at this stage of the inquiry is plenary. United States v. Lieberman, 971 F.2d 989, 994 (3rd Cir.1992). The issue of whether a district court may depart upward for facilitating or concealing another offense under section 5K2.9 on facts similar to those presented in the instant appeal has not been addressed by other Courts of Appeals. Unfortunately, there are no application or background notes to aid us in determining whether facilitating or concealing another offense was adequately considered by the Sentencing Commission when it promulgated the Failure to Appear guideline.
 
 
 13
 We conclude that the district court erred in departing upward by two levels pursuant to section 5K2.9 as the undisputed facts reveal that Cherry's unlawful flight did not facilitate or conceal the murder of Officer Burke and therefore section 5K2.9 is inapplicable.
 
 
 14
 Section 5K2.9 provides "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct." U.S.S.G. Sec. 5K2.9. Although there is a dearth of case law addressing the applicability of a section 5K2.9 departure, courts which have departed upward under section 5K2.9 have based their decision to do so on conduct fundamentally different than that engaged in by Cherry. See, e.g., United States v. Durham, 941 F.2d 858, 863-64 (9th Cir.1991) (section 5K2.9 departure upheld where offense of conviction was committed in attempt to conceal evidence of illegal amphetamine laboratory in another state); cf. United States v. Asper, 753 F.Supp. 1289, 1292 (M.D.Pa.1990) (court declined to depart upward under 5K2.9 where conduct alleged to constitute concealment was already considered in determining the total offense level).
 
 
 15
 In fleeing to Cuba, Cherry removed himself from the reach of the criminal justice system and obstructed justice, but his unlawful flight did not facilitate or conceal the murder of Officer Burke. Cherry admittedly fled to Cuba to avoid being charged, prosecuted and punished for the murder of Officer Burke. However, his conduct is not similar to the type of conduct under which other courts have departed upward under section 5K2.9. Moreover, the aggravating circumstances advanced by the Government in support of its position that an upward departure was warranted were taken into account by the district court by the nine level adjustment pursuant to section 2J1.6(b)(1)[12] and the upward departure for obstruction of justice.
 
 
 16
 D. Sentencing By Reference to the Most Analogous Guideline
 
 
 17
 For the purpose of remand, we address the appropriate manner of sentencing where, as in this case, in the absence of an applicable offense guideline, the sentencing court applies what it deems to be the most analogous guideline.
 
 
 18
 First we note the Sentencing Commission's stated objective of providing "certainty and fairness in meeting the purposes of sentencing, [and] avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted...." 28 U.S.C.A. Sec. 991(b)(1)(B) (Supp.1993). Inherent in the Commission's mission is a certain amount of tension between the goal of ameliorating sentencing disparities, which necessarily requires restricting a sentencing court's discretion, and the necessity of preserving a sentencing court's discretion to fashion an appropriate sentence in unusual cases. Such tension is highlighted in atypical cases where the sentencing court must construct a sentence within the boundaries of the guidelines without having the benefit of a guideline expressly applicable to the offense of conviction and in the face of occasionally conflicting official commentary and background notes.
 
 
 19
 In cases such as this one, where an analogous offense guideline is being used to fashion a sentence, courts should also heed the statutory directive of 18 U.S.C. Sec. 3553(b) which states that "[i]n the absence of an applicable sentencing guideline ... the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission." This necessarily requires a sentencing court to apply "those guidelines and policy statements that can be applied meaningfully," whether directly or by analogy, in fashioning a sentence that satisfies the purposes of sentencing articulated by Congress in 18 U.S.C. Sec. 3553(a)(2).[13]
 
 
 20
 With respect to consideration of departures in the context of constructing a sentence using the most analogous offense guideline, we reiterate the instructions articulated in Kikumura. In that case, we stated:
 
 
 21
 Often, a departure might be supported by aggravating conduct that itself would constitute a separate offense described under a different guideline. In such cases, the reasonableness of a departure may be evaluated by 'treating the aggravating factor as a separate crime and asking how the defendant would be treated if convicted of it.' That exercise necessarily would involve application of the Guidelines' grouping rules ... which ensure that as new offenses are considered, total punishment is increased, if at all, in decreasing marginal increments.... In these cases, analogy to the guidelines is especially appropriate because 'it would throw the structure of the guidelines out of kilter to say that a defendant may receive more time on a departure than he would have received had he been convicted of the crimes leading the judge to depart.'
 
 
 22
 918 F.2d at 1112 (citations omitted). This is not such a case
 
 We further instructed in Kikumura:
 
 23
 Sometimes, the aggravating circumstance not adequately taken into consideration will amount not to a separate crime, but to a special offense characteristic employed in offense guidelines other than those applied to the defendant. In such cases, the gravity attached to the characteristic in the other guidelines provides appropriate guidance as to what degree of departure would be reasonable.
 
 
 24
 Id. at 1113. Such instruction is applicable to this case.
 
 
 25
 Although the guidance provided by our decision in Kikumura and in this opinion is by no means exhaustive of the considerations which enter into the formulation of an appropriate sentence under circumstances such as those presented in the instant case, such guidance provides a sound starting point for a district court.
 
 E. Federal Rule of Criminal Procedure 32
 
 26
 Cherry argues that the sentencing court did not allow him an adequate opportunity to address alleged factual inaccuracies in the presentence report relating to the underlying murder conviction and that the court did not make an explicit written record of its findings and determinations concerning that challenge to the presentence report. The basis for Cherry's argument is a twelve page handwritten document which was prepared by Cherry and submitted to the court at the sentencing hearing. Upon receipt of the document, the district court adjourned the sentencing hearing in order to review the allegations in the document. After reviewing the document, the district court concluded that the main thrust of the document, and Cherry's purpose for submitting it, was to attack his state court conviction for murder and to maintain his innocence of the murder of Officer Burke. The district court advised Cherry that the sentencing hearing was not the proper forum for an attack on the state court conviction and stated that the challenged facts concerning the murder conviction would not be relied upon by the court in formulating Cherry's sentence. (Sentencing Hr'g Tr. at 53).
 
 
 27
 Where a defendant alleges any factual inaccuracy in the presentence report, the Court must make: (1) a finding as to the allegation, or (2) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. Fed.R.Crim.P. 32(c)(3)(D). Our review of the question whether the district court complied with Rule 32(c)(3)(D) is plenary. United States v. Gross, 961 F.2d 1097, 1110 (3d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992). We find no error.
 
 
 28
 Upon review of the twelve page hand written document prepared by Cherry and the transcript of the July 22, 1992, sentencing hearing, we conclude, as did the district court, that the document was an attack on Cherry's state court murder conviction and an assertion of Cherry's innocence of the murder charge. The district court properly concluded that sentencing was not the appropriate forum for attacking the murder conviction, and the challenged facts relating to such conviction were not taken into account in sentencing. There was, therefore, no need to make specific findings and no Rule 32 violation. See Gross, 961 F.2d at 1110. Accordingly, we affirm the district court's decision not to make specific findings with respect to the document submitted by Cherry at the sentencing hearing.
 
 
 29
 F. Application of Guidelines Most Favorable to Defendant
 
 
 30
 The district court, in reliance upon the recommendation of the Probation Office, used the guidelines in effect at the time of the last act involved in the offense conduct, the 1989 guidelines, instead of the guidelines in effect at the time of sentencing, the 1991 guidelines. Under the 1989 guidelines, U.S.S.G. Sec. 2J1.6 permitted the court to consider Cherry's murder conviction in calculating his criminal history category. However, the 1991 guidelines included a new Application Note 4 to section 2J1.6 which provides as follows:
 
 
 31
 In some cases, the defendant may be sentenced on the underlying offense (the offense in respect to which the defendant failed to appear) before being sentenced on the failure to appear offense. In such cases, criminal history points for the sentence imposed on the underlying offense are to be counted in determining the guideline range on the failure to appear offense only where the offense level is determined under subsection (a)(1) (i.e., where the offense constituted a failure to report for service of sentence).
 
 
 32
 U.S.S.G. Sec. 2J1.6, comment. (n. 4).
 
 
 33
 The 1991 application note clearly provides that criminal history points should not be added for the conviction on the underlying offense when, as was the situation in this case, the offense of conviction did not constitute a failure to report for service of sentence. Under the 1991 amendment to section 2J1.6, Cherry would have received no criminal history points, placing him in criminal history category I; with an offense level of twenty, the guideline imprisonment range would have been 33 to 41 months. United States v. Lechuga, 975 F.2d 397, 400 (7th Cir.1992). Instead, applying the 1989 guidelines, Cherry received three criminal history points for his conviction of the murder of Officer Burke, placing him in criminal history category II, see U.S.S.G. Sec. 4A1.1(a), resulting in a guideline imprisonment range of 37 to 46 months.
 
 
 34
 The Sentencing Reform Act requires the sentencing court to consider "the kinds of sentence and the sentencing range established for the applicable category of offense ... as set forth in the guidelines that are issued by the Sentencing Commission ... and that are in effect on the date the defendant is sentenced...." 18 U.S.C. Sec. 3553(a)(4). As a general rule, sentencing courts must apply the guidelines in effect at the time of sentencing, not the time of the crime; it is only where application of the guidelines in effect at sentencing results in a more severe penalty that Ex Post Facto Clause problems arise and courts must apply the guidelines in effect at the time of the offense. United States v. Kopp, 951 F.2d 521, 526 (3d Cir.1991); accord United States v. Aymelek, 926 F.2d 64 (1st Cir.1991); United States v. Cianscewski, 894 F.2d 74, 77 n. 6 (3d Cir.1990). Because application of the 1991 guidelines would result in a lesser, not a harsher, penalty no Ex Post Facto Clause concerns are present in this case.
 
 
 35
 The district court improperly applied the criminal history provision of the 1989 guidelines rather than the more lenient criminal history provisions of the 1991 guidelines which were in effect at the time of sentencing. Accordingly, we remand to the district court for reconsideration of Cherry's criminal history category. On resentencing the district court should utilize the Sentencing Guidelines in effect at the time of resentencing, the guidelines amended as of November 1, 1993 (the "1993 guidelines"). Kopp, 951 F.2d at 531 n. 16. The criminal history provisions of U.S.S.G. Sec. 2J1.6 in the 1991 and 1993 guidelines are identical.
 
 V. CONCLUSION
 
 36
 For the foregoing reasons, we will affirm the district court's upward departure by analogy to the obstruction of justice guideline, U.S.S.G. Sec. 3C1.1, and decision not to make specific findings under Federal Rule of Criminal Procedure 32. We reverse the district court's upward departure by analogy to the official victim guideline, U.S.S.G. Sec. 3A1.2, and upward departure for facilitating or concealing another offense under U.S.S.G. Sec. 5K2.9. Finally, we remand to the district court for reconsideration of Cherry's criminal history category under the 1993 Sentencing Guidelines and for resentencing in a manner consistent with this opinion.
 
 
 
 *
 Hon. Jan E. DuBois, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Because we conclude that the district court should have used the 1991 guidelines at sentencing, we will use the 1991 guidelines in this opinion unless otherwise stated. With respect to all of the guidelines referenced, the 1989 and 1991 guidelines are identical in all relevant respects except for U.S.S.G. Sec. 2J1.6, comment. (n. 4), relating to criminal history category
 
 
 [2]
 The date on which Cherry fled is not set forth with any more specificity in the record
 
 
 [3]
 18 U.S.C. Sec. 1073 states in relevant part:
 Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution ... under the laws of the place from which the fugitive flees ... shall be fined not more than $5,000 or imprisoned not more than five years or both.
 4 U.S.S.G. Sec. 2X5.1, Other Offenses, states:
 If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. Sec. 3553(b) shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable.
 Unlawful Flight to Avoid Prosecution is a Class D felony.
 
 
 [5]
 Section 2J1.6(b)(1) of the 1989 guidelines on which the Probation Office relied is identical to section 2J1.6(b)(2)(A) of the 1991 guidelines
 6 U.S.S.G. Sec. 3A1.2 states in relevant part:
 If--
 (a) the victim was a law enforcement or corrections officer; ... or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status; or
 (b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by 3 levels.
 7 U.S.S.G. Sec. 5K2.0 permits the sentencing court to impose a sentence outside the guideline range if "there exists an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission."
 8 U.S.S.G. Sec. 4A1.3 authorizes an upward departure in the criminal history category "if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct...."
 9 U.S.S.G. Sec. 5K2.9 permits an upward departure "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense...."
 
 
 [10]
 Application Note 3 of the 1989 guidelines to which Cherry refers is identical to Application Note 2 of the 1991 guidelines
 
 
 [11]
 See supra note 6 for the text of U.S.S.G. Sec. 3A1.2
 
 
 [12]
 See supra note 5
 
 
 [13]
 See U.S.S.G. Sec. 2X5.1, Other Offenses, and commentary