**UNITED STATES of America,**

v.

**Demetrios KARAMANOS, Appellant.**

No. 99–5212.

United States Court of Appeals,
Third Circuit.

Argued March 7, 2002.

Filed April 18, 2002.

728

Christopher J. Christie, Esq., Office of the United States Attorney, Newark, NJ, Robert E. Lindsay, Esq., Alan Hechtkopf, Esq., Karen Quesnel, Esq., (Argued) United States Department of Justice, Washington, DC, for Appellee.

Merrill N. Rubin, Esq., (Argued) New York, NY, for Appellant.

Before SCIRICA and COWEN, Circuit Judges, RESTANI *, Judge, United States Court of International Trade.

OPINION

COWEN, Circuit Judge.

Presented for our review is one of four companion cases involving a lengthy trial before the District Court after which defendants were convicted of various federal crimes arising out of a so-called "daisy chain" scheme to avoid paying federal and New Jersey state fuel taxes. The ele-

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

ments of such schemes have been detailed sufficiently elsewhere by this Court. See, e.g., *United States v. Morelli,* 169 F.3d 798, 801 (3d Cir.1999), cert. denied, 528 U.S. 820, 120 S.Ct. 63, 145 L.Ed.2d 54 (1999) (citations omitted). We will add factual detail below as it becomes necessary to the alleged point of error.

Demetrios Karamanos was convicted of: (1) conspiracy (18 U.S.C. § 371) to defraud the United States, to commit tax evasion (26 U.S.C. § 7201), to commit wire fraud (18 U.S.C. § 1343), and to commit money laundering (18 U.S.C. § 1957); (2) eleven counts of attempting to evade excise taxes (26 U.S.C. § 7201); (3) five counts of wire fraud (18 U.S.C. § 1343); and (4) two counts of money laundering (18 U.S.C. § 1957). The District Court sentenced Karamanos to 135 months of incarceration and ordered a special assessment of $950. He appeals, alleging numerous substantive errors relating to his convictions and numerous errors in his sentencing as well. After a thorough review of the parties' submissions and the decisions of the District Court, we will affirm.

## I.

■ Karamanos posits that his convictions based on the federal crime of wire fraud (18 U.S.C. § 1343) cannot stand because the application of that statute in the present case violates the theory of federalism and the principles of the 10th Amendment to the United States Constitution. We do not agree. Karamanos' federalism arguments are eloquently presented but are substantively wide of the mark. The United States Supreme Court has consistently maintained that Congress may constitutionally regulate the "channels" and "instrumentalities" of interstate commerce. See *United States v. Morrison,* 529 U.S. 598, 609, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). The wire fraud statute, as applied

in this case, is in harmony with these Commerce Clause principles. Cases rejecting the theory underlying Karamanos' federalism argument are manifold. See, e.g., *United States v. Panarella,* 277 F.3d 678, 693–94 (3d Cir.2002); *United States v. Porcelli,* 865 F.2d 1352, 1358 (2d Cir.1989); *United States v. Mirabile,* 503 F.2d 1065, 1066–67 (8th Cir.1974); see also *Parr v. United States,* 363 U.S. 370, 389, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). We conclude that the use of the wire fraud statute to prosecute Karamanos did not offend Constitutional principles regarding the proper division of powers between the individual states (such as New Jersey) and the federal government.

■ Karamanos argues that the scheme to defraud did not deprive the State of New Jersey out of any property. We are not persuaded. New Jersey was clearly deprived of property for purposes of the wire fraud statute by the scheme to defraud. The scheme was designed to cheat the State of New Jersey out of tax money that was duly owed under New Jersey tax law. See *Porcelli,* 865 F.2d at 1359–61; see also *United States v. Helmsley,* 941 F.2d 71, 94 (2d Cir.1991). In a very real, clear, and palpable sense, New Jersey was deprived of money or property.

Karamanos further contends that on the facts presented, there was no use of wire fraud "proceeds" for purposes of establishing the money laundering crimes. We note that Karamanos has waived this argument since he did not properly preserve it at the District Court. Moreover, we will not entertain his argument on this point because it suffers from a dispositive procedural infirmity: his argument regarding "proceeds" is based on his assertion that a prior opinion of this Court, *Morelli,* 169 F.3d 798, was wrongly decided. Karamanos requests in his brief that we "revisit" our opinion in *Morelli.* This we cannot do.

Our Internal Operating Procedure does not permit one three-Judge panel to overrule the decision of another three-Judge panel. To overrule a prior panel, the matter must be brought before the Court sitting en banc. Karamanos has not formally requested an en banc hearing on this issue nor, in our view, has he presented adequate grounds for overturning the legal principles established in *Morelli*. We note that Karamanos has not cited any contrary authority to suggest that *Morelli* is inconsistent with precedent of this Court or of the Supreme Court.

Karamanos next argues that there was insufficient evidence to find him guilty of money laundering. We review this claim based on whether any rational factfinder could find the elements of the offense beyond reasonable doubt. *United States v. Veksler*, 62 F.3d 544, 551 (3d Cir.1995) (citations omitted). We find this argument conclusory in nature and despite a voluminous record, Karamanos does not point us to any specific parts of the record that support his assertion. In any event, as further explained in Section II infra, the record amply demonstrates to a reasonable factfinder that Karamanos was either personally involved in the money laundering or could reasonably foresee that his coconspirators would engage in the money laundering conduct.

## II.

■ Karamanos next attacks several aspects of his sentencing. Our review of the District Court's interpretation and application of the federal sentencing guidelines is a question of law subject to plenary review. *United States v. Cherry*, 10 F.3d 1003, 1009 (3d Cir.1993). Pure issues of fact are reviewed for clear error. *Id.* Karamanos asserts that the District Court erred in giving him a two-level upward adjustment for the use of "sophisticated

means" to prevent the government from finding out about the existence or extent of the crime. This argument is without merit. The record indicates that Karamanos was substantially involved in the creation, function and maintenance of the "daisy chain," which we view as an elaborate, complex, and sophisticated scheme devised to avoid payment of millions of dollars in taxes. The daisy chain included the use of numerous sophisticated devices to keep the scheme successfully rolling and to avoid detection by authorities. This included, inter alia, the use of sham companies, offshore accounts, phony invoices, and stolen or improperly obtained tax ("637") licenses. The record before us is more than adequate to support an increase for sophisticated means. See U.S.S.G. § 2T1.1, comment. (n. 4).

■ Karamanos posits that the District Court erred by giving him three-level upward adjustments for his role as a "manager or supervisor" (as opposed to a role as an "organizer or leader"). See Defendant's Brief at 53–56. Again, we are not persuaded. The record demonstrates that Karamanos more than earned these adjustments through his substantial managerial role in the functioning and maintenance of the daisy chain scheme. For example, Karamanos gave orders to an employee and instructed an employee in the preparation of invoices for companies in the daisy chain. He also gave instructions on wiring money through the links of the chain itself, i.e., where to wire the money. Based on our review of the record, the District Court was correct to note that Karamanos played a supervisory or managerial role in the actual day-to-day operation of the fraudulent scheme. See U.S.S.G. § 3B1.1, comment. (n. 2). There was no error in this aspect of his sentencing.

 Karamanos argues that the District Court erred in figuring the amount of New Jersey's tax loss that may be attributed to him individually. According to his theory, he should only be accountable for $185,000, representing the amount contained by his two convictions for money laundering. Anything more, Karamanos asserts, would be contrary to the Jury's verdict in this case. We are not convinced. The District Court properly determined that Karamanos was liable for the total amount of the loss caused by the fraud on the State of New Jersey. Contrary to Karamanos' position, acquitted conduct may be utilized in sentencing. The record demonstrates he played an integral role in the functioning of a scheme that caused an $11 million loss to the State of New Jersey. He was involved with all of the fuel that was funneled through the links in the chain, and, in any event, the actions of his coconspirators in evading New Jersey taxes were reasonably foreseeable. See U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Ramos,* 147 F.3d 281, 286 (3d Cir.1998). Accordingly, we will not disturb the District Court's conclusion that the total New Jersey tax loss may be attributed to him. Karamanos argues that his conduct fell outside the "heartland" of money laundering, and, therefore, the District Court erred by using the money laundering guideline in calculating his sentence. He asserts that the District Court should have used the tax evasion guideline instead of the money laundering guideline. We do not agree.

As mentioned above, the record demonstrates that Karamanos was involved in an elaborate, systematic scheme to defraud. Money derived from the scheme was used to keep the daisy chain going and the links in the chain were set up to avoid detection by authorities. See *Morelli,* 169 F.3d at 805–809. This amounted to a crime of significant duration and marked severity.

The total loss to the State of New Jersey on account of the daisy chain scheme was over 11 million dollars. The daisy chain constitutes serious criminal activity and is the type of conduct that Congress sought to prevent when it proscribed money laundering. There was nothing "atypical" about Karamanos' conduct that would have justified the District Court in not using the money laundering guideline. The District Court made the proper selection. See *United States v. Chilingirian,* 280 F.3d 704, 713–14 (6th Cir.2002).

### III.

We have thoroughly reviewed all the arguments presented by Karamanos in his submissions to this Court, and those presented at oral arguments, and find no basis to disturb the multiple convictions or the sentence imposed by the District Court. The Judgment of Conviction entered on March 16, 1999 will be affirmed.